UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

WASTE MANAGEMENT                          CIVIL ACTION
OF LOUISIANA, L.L.C.

v.                                        NO. 13-226

THE PARISH OF JEFFERSON                   SECTION "F"
THROUGH THE JEFFERSON PARISH COUNCIL

ORDER AND REASONS

Before the Court is the defendant's Rule 12(b)(6) motion to dismiss plaintiff's amended complaint. For the reasons that follow, the motion is DENIED.

**Background**

The malicious prosecution lawsuit before this Court arises from highly public earlier litigation in which Jefferson Parish sued Waste Management in an effort to early terminate the parties' Landfill Contract, so that Jefferson Parish could contract with another waste disposal services provider, River Birch. Waste Management now contends before this Court that Jefferson Parish pursued the prior lawsuit for years, even though it knew that its claims against Waste Management were factually and legally baseless. Waste Management's charges, and prior litigation history are necessarily presented here in detail:

Pursuant to their Landfill Contract, Waste Management was to receive and dispose of waste for Jefferson Parish and also manage a portion of the Jefferson Parish Sanitary Landfill Site defined as

1

the Expansion Area.   The term of the Landfill Contract, which is based on the Expansion Area's capacity, has not expired.

In early 2009 Jefferson Parish requested that Waste Management consent to the early termination of the Landfill Contract.   At first, Waste Management agreed to terms suggested by the Parish. Later, however, the Parish demanded still more concessions from Waste Management.   Jefferson Parish also threatened to sue Waste Management if it did not agree to early termination on its terms; specifically, Jefferson Parish threatened to sue Waste Management and to assert various claims for tens of millions of dollars in damages.   Jefferson Parish added that it could seek early termination of the Landfill Contract under the contract's Annual Appropriation Dependency Clause, a funding provision.

When Waste Management refused to agree to the additional concessions demanded by Jefferson Parish, on August 21, 2009 Jefferson Parish filed in state court a petition for declaratory judgment and for damages against Waste Management.   Jefferson Parish sought, among other things,[1] a declaration as to its right to early terminate the contract under the Annual Appropriation Dependency Clause, which provided in part:

> The continuation of this Agreement is contingent upon the
> appropriation of funds by the Jefferson Parish Council
> for the continued operation and maintenance of the
> Expansion Area.   If the Council fails to appropriate

---

[1]Jefferson Parish also alleged that Waste Management breached the Landfill Contract.

2

> sufficient monies to provide for the continuation of this
> Agreement, the Agreement shall terminate on the last day
> of the fiscal year for which funds were appropriated.

Invoking the funding clause, the Parish sought a declaratory judgment that "in the event the Parish Council decides not to appropriate funds for the fiscal year 2010 for continuation of the Landfill Contract, the Landfill Contract shall be deemed terminated without penalty or expense to the Parish...."

Travelers Casualty and Surety Company of America, which was sued as Waste Management's surety, removed the early termination lawsuit to another Section of this Court on September 14, 2009. On July 22, 2010 Jefferson Parish filed an amended complaint, in which it admitted that it had a pending landfill contract with a competing waste services provider, River Birch, Inc., which, the Parish said, would result in "substantial savings". It was for this stated reason that Jefferson Parish claimed it sought to terminate the Landfill Contract and instead contract with River Birch. Jefferson Parish sought a declaration that:

> if the Parish Council does not appropriate funds for
> fiscal year 2011 for continuation of the Landfill
> Contract with Waste Management in order to take advantage
> of the substantial annual savings available to the Parish
> by contracting with River Birch, Inc. and Highway 90, LLC
> to provide disposal services in lieu of continuing to
> operate the Parish landfill under contract with Waste
> Management, then the Landfill Contract between the Parish
> and Waste Management is terminated effective January 1,
> 2011 without penalty or expense to the Parish except for
> tipping fees earned by Waste Management prior to the
> termination date.

3

Notwithstanding the Parish's claim that it would enjoy substantial savings by contracting with River Birch, the Parish apparently had no information to support its claim that it would save any money by contracting with River Birch.  In fact, Jefferson Parish officials were aware that contracting with River Birch might even be more costly. Jefferson Parish was also aware that a claim that it would save money by contracting with a competitor for the same services was not a valid and good faith exercise of the Landfill Contract's appropriation dependency clause, which is an emergency provision.[2]  Nonetheless, Jefferson Parish pursued, in bad faith, it was claimed, its lawsuit against Waste Management to prematurely terminate the Landfill Contract.

In fact, it was and remains seriously submitted, the reason Jefferson Parish sued Waste Management, despite knowing that no factual or legal basis existed for its claim, was politics:  to pursue a long-standing agenda by Jefferson Parish's former top public officials to have the Parish enter into a long-term waste disposal contract with River Birch, no matter what the cost and involving now-disgraced public officials.   Waste Management's

---

[2]According to Waste Management, this emergency provision is triggered only if the Parish fails to appropriate sufficient funding because of a good faith, legitimate reason such as the inability to obtain funds due to an emergency situation, not because it chooses to allocate funding to a different private waste services provider.  Whatever eventuality the funding provision was supposed to react to, it plainly was pivotal to the prior termination dispute.

4

sordid story continues.

In late 2008, former Parish President Aaron Broussard, former Chief Administrative Officer Tim Whitmer, and former Parish Attorney, Tom Wilkinson, are said to have devised a plan that they believed would result in River Birch being awarded a long-term waste disposal contract with Jefferson Parish.  Against the advice of the Parish's Environmental Affairs Department, Broussard and Whitmer revised and broadened an originally narrow bid Request for Proposals to intentionally solicit a proposal from River Birch that would divert 100% of Jefferson Parish's waste away from the Parish Landfill to the River Birch Landfill.  Next, once River Birch responded with a proposal as anticipated, Broussard, Whitmer, and Wilkinson hand-picked an Evaluation Committee that would exclude any member of the Environmental Affairs Department and, instead, include Wilkinson and another member of the Parish Attorney's office.  Weeks after receiving the River Birch proposal, the Evaluation Committee recommended to the Parish Council that it approve the River Birch proposal due to "significant savings."  The Parish approved the River Birch proposal for contract negotiation and, in June 2009, entered into a 25-year contract with River Birch, which required closure of the Jefferson Parish Landfill, a valuable Parish asset.[3]

_____

[3]The Parish entered into the River Birch contract despite advice from its Environmental Affairs Department that, at that time, more information was needed, that no information supported a

5

The River Birch contract contained a provision that rendered its commencement contingent upon the Parish either (a) obtaining an agreement from Waste Management to early terminate its contract or (b) the Parish obtaining a court judgment stating that it may terminate its contract with Waste Management.  Thus, when Waste Management did not agree to early termination of its contract with the Parish, the Parish filed its August 2009 lawsuit against Waste Management in furtherance of its plan to effectuate its contract with River Birch.  Soon thereafter, in an attempt to conceal the relationship between the River Birch contract and the lawsuit against Waste Management, Whitmer attempted, it was charged, to manipulate the Parish budget and falsify budgetary information such that it would appear that there were "insufficient funds" for the continuation of the Waste Management contract; this would allow the Parish to invoke the appropriation dependency clause and, thereafter, allow the Parish to cancel its contract with Waste Management effective January 1, 2010.

Things began to unravel.  In January 2010 Broussard and Whitmer resigned amidst allegations of corruption and impropriety; Wilkinson resigned in March 2010.  Thereafter, guilty pleas were entered to federal criminal charges.  Despite this and against the advice of its own Environmental Affairs Department, Jefferson

---

conclusion that the Parish would save money, and that the River Birch contract could create a risk of River Birch obtaining a monopoly over waste disposal in the area.

Parish continued its termination litigation against Waste
Management. Even after it filed its amended complaint in mid-2010,
in which Jefferson Parish disclosed its contractual relationship
with River Birch and that relationship to the Waste Management
litigation, and even after it had approved a budget that included
funding for the 2010 Landfill Contract with Waste Management,
Jefferson Parish continued to press the appropriateness of its use
of the appropriation dependency clause on the basis of funding and
cost savings to terminate Waste Management. All these very
inflammatory points animated the prior litigation.

    In late 2010 Waste Management continued to defend against
Jefferson Parish's lawsuit, including taking depositions of Parish
officials. In bringing to light the lack of basis for the Parish's
claim against it, even the Parish's own Environmental Affairs
Department acknowledged that (1) the Parish never had any
information to support the claim that the Parish would save money
by contracting with River Birch, and that (2) the Parish's proposed
use of the appropriation dependency clause to save money would not
constitute a proper use of that clause.

    In January 2011 an independent consultant confirmed that the
River Birch contract would in fact cost, not save, the Parish
money. Specifically, the report stated that the River Birch
contract would cost the Parish between $6 million and $39 million
more than if the Parish continued to dispose of its waste at the

Parish Landfill.  Even with this turn of events, Jefferson Parish continued to press its termination lawsuit for nearly another year.[4]

But then, on November 29, 2011, Jefferson Parish filed suit for declaratory judgment against River Birch in state court, in which it sought to void the River Birch contract.  The petition invoked paragraph 36 of the River Birch contract, which made the commencement of the River Birch contract contingent on Jefferson Parish obtaining a court judgment stating that it could early terminate its Landfill Contract with Waste Management under the appropriation dependency clause.  The sole impetus for Jefferson Parish seeking to void the River Birch contract was the public revelation that there would be no cost savings as claimed -- a central allegation of Jefferson Parish's appropriation dependency clause claim against Waste Management (in another Section of this Court).  On December 15, 2011 Jefferson Parish and River Birch signed a consent judgment in the state court lawsuit, which voided the River Birch contract.  The only basis for voiding the River Birch contract was the telling admission by Jefferson Parish that paragraph 36 of the River Birch contract could never be satisfied

---

[4]Parish President John Young publicly acknowledged the veracity of the report and in particular the report's conclusion that contracting with River Birch would cost the Parish money.  In response to the report, Mr. Young also publicly directed the Parish's attorney to investigate options for cancelling the River Birch contract.

(that is, the Parish could not succeed in its essential appropriation dependency clause claim against Waste Management for early termination of the Waste Management Landfill Contract). Specifically, the state court consent judgment provides:

> The Contract among Jefferson Parish, River Birch Incorporated, and Hwy-90, LLC was signed by the Parish on June 30, 2009, by River Birch Incorporated on September 15, 2009, and by Highway-90, LLC on September 15, 2009. The Covenant was signed on September 23, 2009, and was recorded in the Jefferson Parish Conveyance Book as Instrument Number 1046573. **The Contract is not in effect because a suspensive condition contained in Paragraph 36 of the Contract has not been met. <u>The parties acknowledge that the suspensive condition cannot be met.</u>** Considering the foregoing, the Contract is hereby declared null, void, and of no effect.

(emphasis added). At the time Jefferson Parish agreed to the Consent Judgment, in which it acknowledged that it could not succeed in its appropriation dependency clause claim against Waste Management, Waste Management had not in any way agreed to the dismissal of that claim against it.

Finally, in January 2012, after the Parish made both public and judicial acknowledgments that its claim against Waste Management could not succeed, Jefferson Parish asked for a voluntary dismissal with prejudice of its claims against Waste Management. At first, Waste Management opposed the request. However, on February 6, 2012 Waste Management joined in the request for voluntary dismissal; by this motion, Jefferson Parish and Waste Management jointly understood the federal court could dismiss the Parish termination lawsuit; they acknowledged that the Jefferson

9

Parish/River Birch contract had been declared null and void by the state court; and the parties agreed that the Parish's request for declaratory relief was rendered moot by the Parish/River Birch consent judgment; in fact, the motion for voluntary dismissal attached a copy of the consent judgment, which contained the Parish's admission that it could not succeed on its pivotal appropriation dependency clause claim against Waste Management. The parties also stipulated that

> Waste Management has neither pled nor asserted in any of its pleadings in this litigation including counterclaims, a claim of malicious prosecution or bad faith litigation against the Parish in connection with this litigation, and the Parish agrees that it shall at no time assert a defense based on *res judicata* as to any [such] claim, which Waste Management may assert in future litigation.[5]

It was not until February 7, 2012, approximately two and a half years after Jefferson Parish originally sued Waste Management,

---

[5]Waste Management alleges that its agreement to join the Parish's request for voluntary dismissal

> was not the result of any sort of settlement or compromise. To the contrary, Waste Management only agreed to jointly move for voluntary dismissal of Jefferson Parish's appropriation dependency clause claim because the motion was for dismissal with prejudice and it contained the acknowledgment by Jefferson Parish that the Consent Judgment...in which Jefferson Parish acknowledged that it could not succeed in its appropriation dependency clause claim against Waste Management...was fatal to Jefferson Parish's claim. In fact, Waste Management expressly reserved its right to bring a malicious prosecution claim against Jefferson Parish....

that another Section of this Court granted the joint request, and dismissed Jefferson Parish's case with prejudice.

It is against this bloated and tortuous backdrop that on February 6, 2013 Waste Management filed the pending lawsuit against Jefferson Parish, alleging malicious prosecution and seeking to recover attorney's fees and costs. Waste Management now charges in this Court that Jefferson Parish maliciously initiated and pursued its claims against Waste Management for early termination of the Landfill Contract, all the while knowing that its claim was factually flawed and baseless in law. Jefferson Parish at first requested dismissal of Waste Management's initial complaint on the ground that it fails to state a claim upon which relief can be granted. But on March 27, 2013 the Court denied without prejudice the motion to dismiss, and permitted Waste Management to file an amended complaint. On April 3, 2013 Waste Management filed its amended complaint, in which it alleges that the dismissal of the Parish's claim on February 7, 2012 was a dismissal based on and reflecting the lack of merit of the Parish's claim, and that the dismissal constituted a bona fide termination of the Parish's appropriation dependency clause claim against Waste Management; all in Waste Management's favor.

Jefferson Parish again seeks dismissal of Waste Management's amended complaint for malicious prosecution on the ground that it fails to state a claim upon which relief may be granted.

I.

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a party to move for dismissal of a complaint for failure to state a claim upon which relief can be granted. Such a motion is rarely granted because it is viewed with disfavor. See Lowrey v. Tex. A & M Univ. Sys., 117 F.3d 242, 247 (5th Cir. 1997) (quoting Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc., 677 F.2d 1045, 1050 (5th Cir. 1982)).

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009)(citing Fed.R.Civ.P. 8). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. at 678 (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

Thus, in considering a Rule 12(b)(6) motion, the Court "accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" See Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit, 369 F.3d 464 (5th Cir. 2004) (quoting Jones v. Greninger, 188 F.3d 322, 324 (5th Cir. 1999)). But, in deciding whether dismissal is warranted, the Court will not accept conclusory allegations in the complaint as true. Kaiser, 677 F.2d at 1050. Indeed, the Court must first identify allegations that

12

are conclusory and, thus, not entitled to the assumption of truth. Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009). A corollary: legal conclusions "must be supported by factual allegations." Id. at 678. Assuming the veracity of the well-pleaded factual allegations, the Court must then determine "whether they plausibly give rise to an entitlement to relief." Id. at 679.

"'To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Gonzalez v. Kay, 577 F.3d 600, 603 (5th Cir. 2009)(quoting Iqbal, 556 U.S. at 678)(internal quotation marks omitted). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)(citations and footnote omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 ("The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."). This is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short

13

of the line between possibility and plausibility of entitlement to relief." Id. at 678 (internal quotations omitted) (citing Twombly, 550 U.S. at 557). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief'", thus, "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (alteration in original) (citation omitted).

Finally, "[w]hen reviewing a motion to dismiss, a district court 'must consider the complaint in its entirety, as well as other sources ordinarily examined when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." Funk v. Stryker Corp., 631 F.3d 777, 783 (5th Cir. 2011)(quoting Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007)).

II.

To state a claim for malicious prosecution under Louisiana law, a plaintiff must allege facts supporting several essential elements:

> (1)  the commencement or continuance of an original criminal or civil judicial pleading;
> (2)  its legal causation by the present defendant against plaintiff who was defendant in the original proceeding;
> (3)  its bona fide termination in favor of the present plaintiff;
> (4)  the absence of probable cause for such proceeding;
> (5)  the presence of malice therein; and
> (6)  damages conforming to legal standards resulting to

14

plaintiff.

Hibernia Nat'l Bank of New Orleans v. Bolleter, 390 So.2d 842 (La. 1980).  Because Louisiana public policy guarantees that people acting in good faith shall have access to courts to redress wrongs, malicious prosecution lawsuits are disfavored; indeed, "in order to sustain them, a clear case must be established, where the forms of justice have been perverted to the gratification of private malice and the willful oppression of the innocent."  Johnson v. Pearce, 313 So.2d 812, 816 (La. 1975)(quotation omitted).

Jefferson Parish seeks to dismiss Waste Management's malicious prosecution lawsuit on the ground that Waste Management has not and cannot allege the third element -- that there was a bona fide termination of the prior termination lawsuit in Waste Management's favor.  The Parish also challenges the sufficiency of the factual allegations supporting the fifth element -- malice.

A.   "Favorable" Termination?

The parties earnestly dispute the contours of the favorable termination element.[6]  Jefferson Parish would have this Court conclude that, as a matter of law, that its voluntary dismissal of the underlying suit nullifies any subsequent malicious prosecution

---

[6]There is no dispute that the underlying litigation is ended and final.  The dispute involves whether its termination can be considered to be "on the merits" and "favorable" to Waste Management.

claim.[7]   Absent a judicial resolution in favor of the aggrieved malicious prosecution plaintiff, the Parish insists, the underlying lawsuit was not terminated on the merits.   Waste Management counters that it has pled facts that, if proven, satisfy the bona fide termination element of its malicious prosecution claim; Waste Management urges that its amended complaint alleges facts that go beyond merely prevailing in the underlying lawsuit as a result of some mere procedural or technical defense.   The prior lawsuit need not end with a trial on the merits, Waste Management submits, as long as the termination is not merely procedural, but, rather, "reflects the merits" of the underlying action.   The Court, and common sense, agrees.   Because the voluntary dismissal directly focused the merits of the early termination case, in that the Parish publicly and judicially acknowledged that its central appropriations dependency clause claim lacked merit, Waste Management correctly contends that its amended complaint satisfies the bona fide "favorable" termination element at the pleading stage of this lawsuit.   At this stage of the litigation, and on this record, the Court agrees that Waste Management's allegations satisfy the favorable termination requirement.

On one end of the spectrum, a victory after a trial on the merits in the underlying litigation in favor of the malicious

---

[7]Jefferson Parish also suggests that a request for a judicial declaration of rights under a contract, as a matter of law, can never constitute malicious prosecution.

prosecution plaintiff is by far the clearest example of a bona fide termination in favor of the malicious prosecution plaintiff. At the other end, it is clear that dismissal of the underlying lawsuit on only technical or procedural grounds does not implicate the dispute's merits and, therefore, does not satisfy the "favorable" component of the bona fide termination requirement. Of course, there are other ways in which a lawsuit may be terminated; those will fall in the middle of this spectrum. And this case raises one of them: voluntary dismissal effected not as a result of a settlement but, rather, after (the allegations suggest) one party has candidly conceded that it could not succeed on the central merits of its claim in the underlying litigation.

Waste Management advances the argument that its case falls somewhere in that middle, but that a review of the circumstances establishes that it did, in fact, succeed on the merits of its claim (or would have, had it prolonged the underlying litigation and forced a judicial determination of what the Parish had already conceded – that it could not succeed on its claim). For its part, Jefferson Parish would have this Court hold that there is no middle ground in Louisiana; that malicious prosecution cases fall into one or the other category and that, as a matter of law, a case that is voluntarily dismissed can never be considered a "favorable" termination. A review of the scope of the favorable termination element in the Louisiana case literature reveals no clear bright-

17

line rule to apply in the voluntary dismissal context under the facts alleged here.

A merely procedural victory, such as when a case is dismissed on the ground of improper venue,[8] prescription,[9] or failure to allow discovery[10] is not a bona fide termination in favor of a malicious prosecution plaintiff. See Deville v. Marcantel, 567 F.3d 156, 173 (5th Cir. 2009)(citation omitted), cert. denied, 130 S.Ct. 243 (2010); see also Savoie v. Rubin, 820 So.2d 486 (La. 2002). Procedural victories simply do not resolve the merits of the dispute. See Savoie, 820 So.2d at 488. Even if a procedural dismissal is accomplished "with prejudice", the dismissal on technical grounds is not transformed into a conclusion on the merits so as to satisfy the favorable termination element of a malicious prosecution claim. See Deville, 567 F.3d at 173 ("A procedural dismissal of the [prior lawsuit], even if the dismissal is with prejudice, does not satisfy [the bona fide termination]

---

[8]Savoie v. Rubin, 820 So.2d 486, 488 (La. 2002)(dismissal of the underlying suit based upon an exception raising the objection of improper venue is not a bona fide termination of the underlying litigation in the plaintiff's favor).

[9]Milling, Benson, Woodward, Hillyer, Pierson and Miller, L.L.P. v. American Marine Holding Co., 729 So.2d 139, 142 (La.App. 4 Cir. 1999)(dismissal of the underlying suit based upon an exception raising the objection of prescription is not a bona fide termination of the underlying litigation in the plaintiff's favor).

[10]Terro v. Chamblee, 663 So.2d 75, 77-78 (dismissal of the underlying suit based upon a failure to allow discovery is not a bona fide termination of the underlying litigation in the plaintiff's favor).

element of [a malicious prosecution] cause of action.").[11]  Indeed, the purpose of this requirement, the Louisiana high court has observed, "is that the underlying litigation should be brought to a conclusion on the merits before a malicious prosecution suit based on the underlying litigation is allowed to proceed."  See Savoie, 820 So.2d at 488.  The question remains: what is a "conclusion on the merits"?

Because the Louisiana Supreme Court focused on the bona fide termination element most recently in Savoie, the parties dispute the parameters of the element in the context of the Savoie decision:  In Savoie, Dr. Rubin sued his former lawyer, Mr. Savoie, for legal malpractice in two venues:  he first filed in Orleans Parish (*Rubin I*) and one month later filed an identical suit in Jefferson Parish (*Rubin II*).  In *Rubin I*, Mr. Savoie filed an exception of improper venue, which the court granted and dismissed the suit with prejudice.  Upon dismissal of *Rubin I* -- and, significantly, while *Rubin II* remained pending in Jefferson Parish -- Mr. Savoie filed a malicious prosecution and defamation lawsuit

_____

[11]In Deville, the Fifth Circuit affirmed the district court's ruling dismissing, on summary judgment, a malicious prosecution claim where it was undisputed that the charges in the underlying lawsuit were dismissed by the parish district attorney's decision to *nolle prosse* the charges, "which is a procedural dismissal of the charges without prejudice--not a bona fide termination in the defendant's favor."  Id.  In reaching this conclusion, the Fifth Circuit noted that dismissal of an indictment pursuant to La.Code Crim. P. 691 and 693 "is not a bar to a subsequent prosecution...."  Id. at 173 n.10.

against Dr. Rubin, his attorney and that attorney's law firm in Orleans Parish (*Rubin III*). Mr. Savoie alleged that Dr. Rubin made false allegations in *Rubin I* and that Dr. Rubin's lawyer and his firm failed to independently investigate the facts before filing a malpractice lawsuit. Dr. Rubin and the other defendants filed exceptions of prematurity and no cause of action, arguing that *Rubin II* remained pending, making Mr. Savoie's malicious prosecution suit premature. In opposing the exceptions, Mr. Savoie argued that the judgment of dismissal "with prejudice" in *Rubin I* was a final judgment by operation of La. Code Civ. P. art. 1673. The district court denied the defendants' exceptions without assigning reasons, and the court of appeal denied the writ without comment. But the state high court granted the writ, and remanded the case to the court of appeal for briefing, argument, and full opinion. After the appellate court found that the judgment of dismissal with prejudice in *Rubin I* is a final judgment, affirming the district court's judgment, the state high court again granted certiorari, framing the "sole issue" as:

> [W]hether the judgment of the district court in *Rubin I* dismissing that suit with prejudice constitutes a final judgment on the merits of the underlying litigation, such that the malicious prosecution suit in *Rubin III* may now proceed.

Id. at 488. The Louisiana Supreme Court first contrasted the Civil Code definitions of final judgment (a "judgment that determines the merits in whole or in part...") and interlocutory judgment (a

"judgment that does not determine the merits but only preliminary matters in the course of the action"). See id. Even though it is settled that a judgment sustaining an exception of improper venue is an interlocutory judgment, Mr. Savoie insisted that the dismissal of *Rubin I* "with prejudice" had the effect of a final judgment; he invoked La. Code Civ. P. art. 1673, which provides that a "judgment of dismissal with prejudice shall have the effect of a final judgment of absolute dismissal after trial." But the Louisiana Supreme Court refused to adopt the literal reading urged by Mr. Savoie. Id. at 488 ("we believe that construing an interlocutory judgment of dismissal based on venue as a final disposition on the merits would produce an absurd or unintended result under the facts of this case.").

"The obvious purpose of the 'bona fide termination' requirement in malicious prosecution cases," the state high court observed, "is that the underlying litigation should be brought to a conclusion on the merits before a malicious prosecution suit based on the underlying litigation is allowed to proceed." Id. It was clear on the facts presented that "the merits of the underlying litigation remain pending in *Rubin II*." Id. at 488 n.4. Thus, the state high court concluded, "the district court's dismissal of *Rubin I* based on an exception of improper venue cannot be equated to a 'bona fide termination' of the underlying litigation in Mr. Savoie's favor." Id.

Jefferson Parish seizes on the "conclusion on the merits" pronouncement in support of its argument that a voluntary dismissal can not be considered such a conclusion because the court does not reach the merits. But Savoie does not resolve the dispute presented here: whether a voluntary dismissal can ever be considered a favorable termination in favor of the prior defendant (malicious prosecution plaintiff). There is no case literature in Louisiana directly on point to settle this debate. Relatedly, and paradoxically, whether a voluntary dismissal of underlying criminal charges may constitute a bona fide termination in favor of the accused has not been resolved doctrinally in the case literature.[12]

---

[12]**Compare** Banken v. Locke, 66 So. 763 (La. 1914)(noting that "[t]he prosecution of a cause does not always involve a trial[; here] the prosecution had terminated in a nolle prosequi...ad plaintiff therefore had the right to institute this [malicious prosecution] suit"); LeBlanc v. Pynes, 69 So.3d 1273 (La.App. 2 Cir. 2011)(finding that nolle prosequi constituted a bona fide termination and noting that the law enforcement official testified that the lack of evidence led to the dismissal of the criminal prosecution); Hope v. City of Shreveport, 862 So.2d 1139 (La.App. 2 Cir. 2003)(finding bona fide termination in favor of malicious prosecution plaintiff element satisfied where criminal proceedings had been dismissed by the district attorney); Amos v. Brown, 828 So.2d 138 (La.App. 2 Cir. 2002)(noting that "a nol pros implies a 'bona fide' termination in favor of [the malicious prosecution plaintiff] where the nol pros had not been obtained as part of a bargained-for dismissal but, rather, because of abandonment by the victim); Plessy v. Hayes Motor Co., Inc., 742 So.2d 934 (La.App. 2d Cir. 1999)("[w]e find the dismissal of the charge...sufficient to establish a bona fide termination of the criminal proceedings"); Watson v. Church's Fried Chicken, Inc., 527 So.2d 979 (La.App. 4th Cir. 1988)(dismissal of charges constituted bona fide termination in favor of malicious prosecution plaintiff), writ denied 532 So.2d 135 (1988) **with** Deville v. Marcantel, 567 F.3d 156, 173 (5th Cir. 2009)(holding that procedural dismissal, as of right, of charges against a criminal defendant, which does not

22

A majority of other states, Waste Management points out, have determined that a voluntary dismissal satisfies the favorable termination element of a malicious prosecution claim if the circumstances indicate that the suit was dismissed because the underlying claims were without merit. See, e.g., Frey v. Stoneman, 150 Ariz. 106, 722 P.2d 274, 279 (1986) (holding that a termination will be deemed favorable based on the circumstances of dismissal); Siebel v. Mittlesteadt, 41 Cal.4th 735, 62 Cal.Rptr.3d 155, 161 P.3d 527, 531 (2007) (reasoning that the judgment as a whole must be construed to determine whether a dismissal is a favorable termination); Cult Awareness Network v. Church of Scientology Int'l, 177 Ill.2d 267, 226 Ill.Dec. 604, 685 N.E.2d 1347, 1354 (1997); Nelson v. Miller, 227 Kan. 271, 607 P.2d 438, 446 (1980); Plouffe v. Mont. Dep't of Pub. Health & Human Servs., 2002 MT 64, ¶ 35, 309 Mont. 184, 45 P.3d 10 ("[T]he law in Montana affords a presumption that voluntary dismissal of an action by the plaintiff reflects favorably for the defendant unless evidence demonstrates the converse."); Neely v. First State Bank, 1998 OK 119, ¶ 10, 975

---

bar subsequent prosecution, does not satisfy bona fide termination requirement); Irby v. Harrell, 74 So. 163 (La. 1917)(noting that to show that a prosecution terminated favorably "there must have been an acquittal, or else an abandonment of the prosecution equivalent thereto", but "[a]n abandonment [of the prosecution] brought about by a compromise[] is not the equivalent of an acquittal."); Congress Square Limited Partnership v. Polk, No. 10-317, 2011 WL 837144 (E.D. La. Mar. 4, 2011)(finding that favorable termination element was not satisfied in light of fact that the parties did not dispute that the underlying charge of criminal trespass was dismissed by the city attorney prior to trial).

P.2d 435, 437 (reviewing the circumstances underlying a dismissal to determine whether the dismissal was a favorable termination); Siliski v. Allstate Ins. Co., 174 Vt. 200, 811 A.2d 148, 151-52 (2002); Portland Trailer & Equipment, Inc. v. A-1 Freeman Moving & Storage, Inc., 182 Or.App. 347, 356, 49 P.3d 803, 808 ("… the voluntary dismissal of an underlying action before a trial on the merits is favorable to the defendant if it reflects adversely on the merits of the underlying action."); Jaress & Leong v. Burt, 150 F. Supp. 2d 1058, 1064 (D.Haw. 2001) (explaining that the Hawaii Supreme Court has found that voluntary dismissals with prejudice satisfy the favorable termination requirement).[13]

Jefferson Parish contends that the merits of the underlying lawsuit were never reached.  Waste Management counters that the voluntary dismissal with prejudice was indeed conclusive of the merits of the case because the dismissal was entered after Jefferson Parish conceded that it could not succeed in its attempt to obtain declaratory relief concerning early termination of the contract.  That its heavy reliance on the funding provision was impotent.  That concession seems decisive to this Court, the rather hazy case literature notwithstanding.

---

[13]Some states allow a voluntary dismissal to satisfy that element no matter what the circumstances. See Barrett Mobile Home Transp., Inc. v. McGugin, 530 So.2d 730, 735 (Ala.1988) (holding that a voluntary dismissal without prejudice will suffice as a favorable termination); Raine v. Drasin, 621 S.W.2d 895, 900 (Ky.1981) (holding that an agreed order of dismissal terminates prior litigation and constitutes a favorable termination).

Given that the case literature does not speak to what circumstances determine whether to interpret a voluntary dismissal as a favorable dismissal, the Court must endeavor to apply the principles that have been developed and make an informed guess as to how the state high court might decide this issue, being mindful that this issue is being raised in the context of a motion to dismiss, not summary judgment. Louisiana case literature hints unsatisfactorily that there can be no favorable termination when the merits have not been reached. Jefferson Parish insists that the underlying litigation it pursued against Waste Management was not judicially resolved after a trial or dispositive motion practice and that, therefore, it was not conclusive of the merits. This argument pays homage to form over substance and insists that the Court must ignore the Parish's unqualified concession that it could not succeed.[14]   That its dependence on the funding provision was flawed and defective.   Waste Management points to detailed factual allegations concerning the history of and how the underlying litigation was resolved and how the resolution, it is alleged, could not be merely procedural, but was accomplished after a conclusion on the merits: (1) it was not resolved as a result of a settlement; (2) Jefferson Parish acknowledged that it could not

---

[14]No rule demands a full-blown trial on the merits.   Nor is there a blanket rule in Louisiana that provides that a voluntary dismissal of a claim prior to trial can never satisfy the bona fide termination element.

succeed on its claim against Waste Management; and (3) Waste Management specifically reserved its right to seek relief for malicious prosecution.   In other words, the allegations posit, Jefferson Parish abandoned its lawsuit against Waste Management after conceding that it could not possibly succeed on its claim. Although not a judicial determination following a trial on the merits, the Court finds that Waste Management has alleged sufficient facts to plausibly support the favorable termination element.[15]

B.   Malice?

Jefferson Parish next contends that the facts as pled by Waste Management, if taken as true, fail to support a finding of malicious intent sufficient to satisfy that element of Waste Management's malicious prosecution claim.   The Court disagrees.

"Malice can be inferred when the evidence shows that 'the claimant acted with absence of caution and inquiry that a person should employ before filing suit'" and "malice exists when there is 'knowledge that is false or a reckless disregard for the truth.'"

_____

[15]The Parish's abandonment of its claim under the factual circumstances alleged by Waste Management plausibly supports a finding (if all the facts are proven) that the voluntary dismissal was effected as a result of a conclusion on the merits.   It seems unreasonable at best to demand that Waste Management continue defending litigation that Jefferson Parish admits has no merit.   Of course the Court makes no determination regarding the ultimate merit of Waste Management's claim.   And it is important to note that no criminal charges were ever asserted against River Birch or its principals.   In fact, the U.S. Department of Justice publicly announced the termination of its investigation.

<u>Wiley v. Wiley</u>, 800 So.2d 1106 (La.App. 3 Cir. 2001)(citations omitted).   Indeed, let's remember an earlier caution of the Louisiana Supreme Court:

> [M]alice does not submit readily to defintion....  Any feeling of hatred, animosity, or ill will toward the plaintiff, of course, amounts to malice....  But it is not essential to prove such ill will.  Malice is found when the defendant uses the prosecution for the purpose of obtaining an unfair advantage, for instance, as a means to extort money, to collect a debt, to recover property, to compel performance of a contract, ...or as an experiment to discover who might have committed the crime....

<u>Miller v. East Baton Rouge Parish Sheriff's Department</u>, 511 So.2d 446, 453 (La. 1987)(internal quotations and citations omitted).

Waste Management's allegations that the Parish made false claims in bad faith and attempted to obtain a private advantage concerning its attempt to invoke the appropriation dependency clause are sufficient to withstand the Parish's challenge to the technical sufficiency of its allegations.

Accordingly, IT IS ORDERED: that the defendant's motion to dismiss the amended complaint is DENIED.

New Orleans, Louisiana, June 3, 2013

MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE

27